**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| KARRY PEREZ<br>Manteca, CA 95337, | Case No. |
| JOHN FITZGERALD<br>Mullica Hill, NJ 08062, | **JURY TRIAL DEMANDED** |
| KATHY CAPRON<br>Salisbury, NH 03628, | **CLASS ACTION COMPLAINT** |
| MARK WADE<br>Las Vegas, NV 89122, | |
| JESSICA SHROPSHALL<br>Corona, CA 92882, and | |
| HADEL TOMA<br>Eastpointe, MI 48021 | |
| on behalf of themselves and all others<br>similarly situated, | |
|        Plaintiffs, | |
|           v. | |
| BRITAX CHILD SAFETY, INC.<br>4140 Pleasant Road<br>Fort Mill, SC 29708 USA | |
|        Defendant. | |

## **CLASS ACTION COMPLAINT**

Plaintiffs[1] file this Class Action complaint on behalf of themselves and all others

similarly situated against Britax Child Safety, Inc. ("Britax" or "Defendant") and as grounds

---

[1] "Plaintiffs" refer to the individuals referenced in the caption above and described more fully in paragraphs 1 to 22 below.

state:

## PARTIES

1.    Plaintiff Karry Perez is a citizen of California and resides in Manteca, California. Plaintiff Perez purchased the Ironman Stroller on June 17, 2015 and experienced the defect. While pushing her granddaughter on the boardwalk, the wheel fell off causing the stroller to fall forward and her granddaughter to scrape up her leg.

2.    Plaintiff John Fitzgerald is a citizen of New Jersey and resides in Mullica Hill, New Jersey. Plaintiff Fitzgerald purchased the Revolution SE Stroller in August, 2016.

3.    Plaintiff Kathy Capron is a citizen of New Hampshire and resides in Salisbury, New Hampshire. Plaintiff Capron purchased the Revolution Pro Stroller on July 1, 2015 and experienced the defect in 2016. While her husband, daughter, and herself were out jogging with the stroller, the wheel fell off and hit her, cutting her knee and the palm of her hand. Her daughter suffered from scrapes while her husband had a bruised or cracked rib from being hit with the handle. They installed the front wheel as the video shows.

4.    Plaintiff Mark Wade is a citizen of Nevada and resides in Las Vegas, Nevada. Plaintiff Wade purchased the Ironman Stroller in 2016 and experienced the defect. He was walking through the park with his daughter in the stroller when the defect occurred. He sprained his ankle and his daughter suffered from a bleeding head injury.

5.    Plaintiff Jessica Shropshall is a citizen of California and resides in Corona, California. Plaintiff Shropshall purchased the Revolution Flex Duallie stroller on August 8th, 2015.

6.    Plaintiff Hadel Toma is a citizen of Michigan and resides in Eastpointe, Michigan. Plaintiff Toma purchased the Sport Utility Stroller in 2016 and experienced the defect in May,

2016. Plaintiff bruised a wrist, chin, and knee and the child bruised the left wrist and left side of the face.

7.      Defendant Britax Child Safety, Inc. is a South Carolina corporation with a principal place of business in Fort Mill, South Carolina.

## JURISDICTION AND VENUE

8.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, and (3) at least one member of the Class of plaintiffs is a citizen of a state different from Defendant.

9.      This Court has personal jurisdiction over Defendant because Defendant personally availed itself of jurisdiction in this district by causing its products to be sold and used by Plaintiffs in this district, giving rise to their claims.

10.      Venue is proper in the District of South Carolina under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

11.      All conditions precedent to this action have occurred, been performed, or have been waived.

## FACTUAL ALLEGATIONS

12.      Defendant designs, manufactures, and sells "child safety technology," including car seats and stroller.

13.    Defendant markets itself and its products as "high-quality," "innovative," "revolutionary," "beyond 'good enough,'" "pushing boundaries," and "driving safety standards to ensure children have never been better protected on the move."[2]

14.    In 2011, Defendant acquired BOB Gear, a company which also designed, manufactured, and sold car seats and stroller.[3] Defendant assumed all assets and liabilities of BOB Gear and is the successor to BOB Gear.

15.    Defendant continued to design, manufacture, and sell BOB Strollers since their acquisition in 2011.

16.    BOB Strollers at issue were manufactured and imported between 1997 and September 2015. Approximately 493,000 strollers were manufactured and imported between December 2011 and September 2015, and an unknown number of strollers were manufactured and imported before that time. BOB Strollers are also sold on secondary markets.[4] BOB Strollers are sold at retail from $350 to more than $500.

17.    BOB Strollers are designed and marketed to be suitable for jogging and for use in rough terrain. BOB Strollers are notable for their large front wheel. The front of the stroller has a "fork" which holds the front wheel with an axle. The axle is attached to the fork with a "quick release" mechanism that allows the user to easily remove the front wheel.

18.    The axle, axle fork, and/or axle quick release ("front wheel assembly") of the BOB Strollers are defectively designed and/or manufactured, allowing use of the stroller without the front wheel being properly secured. Because of the defect, the wheel may detach unexpectedly. When the front wheel detaches, the stroller may tip over or the fork may dig into the ground in front of the stroller, causing injuries to children in the stroller and/or the person

---

[2] https://us.britax.com/why-britax/about-us/
[3] http://www.bobgear.com/about
[4] https://www.cpsc.gov/s3fs-public/pdfs/recall/lawsuits/abc/049--2018-11-09%20Consent%20Agreement.pdf

pushing the stroller. At high speeds or in rough terrain—conditions in which the stroller is designed and marketed to be used—injuries may be more serious.

19.    BOB Strollers at issue include, without limitation, the following models: IRONMAN, IRONMAN Duallie, IRONMAN Sport Utility Stroller, Revolution, Revolution 12" AW, Revolution CE, Revolution Duallie, Revolution Duallie 12" AW, Revolution FLEX, Revolution FLEX Duallie, Revolution PRO, Revolution PRO Duallie, Revolution SE, Revolution SE Duallie, Sport Utility Stroller, Sport Utility Stroller D'Lux, Sport Utility Stroller Duallie, Stroller Strides, Stroller Strides Duallie, Stroller Strides Fitness Stroller, Stroller Strides Fitness Stroller Duallie (hereinafter collectively referred to as "BOB Strollers" or "Strollers").

20.    At least 200 reports of the defect, accounting for approximately 100 injuries to children and adults, have been submitted to the Consumer Product Safety Commission (CPSC) since 2012.[5]

21.    Injuries to children have included "a concussion, injuries to the head and face requiring stitches, dental injuries, contusions and abrasions." Injuries to adults have included "torn labrum, fractured bones and torn ligaments, contusions and abrasions."[6]

22.    The CPSC filed an administrative complaint against Defendant in February 2018 after Defendant was made aware of the injuries but declined to recall or repair the defective stroller.[7]

23.    In November 2018, the CPSC and Defendant entered into a consent agreement providing that Defendant would (1) engage in an information campaign to instruct consumers as to the proper use of the strollers' quick release and (2) provide incentives, such as free parts or

---

[5] https://www.washingtonpost.com/business/economy/after-hundreds-of-crashes-this-britax-jogging-stroller-faced-recall-then-trump-appointees-stepped-in/2019/04/02/faf23c20-4c06-11e9-b79a-961983b7e0cd_story.html
[6] https://www.cpsc.gov/Newsroom/News-Releases/2018/cpsc-sues-britax-over-hazardous-jogging-stroller-action-prompted-by-ongoing-harm-to
[7] https://www.cpsc.gov/Newsroom/News-Releases/2018/cpsc-sues-britax-over-hazardous-jogging-stroller-action-prompted-by-ongoing-harm-to

discounts, to users who participate in the information campaign and who purchased a stroller manufactured between January 1, 2009 and September 30, 2015, of just one year.[8]

24.    According to the Washington Post, Defendant was approximately three months late in meeting its obligations under the consent agreement to inform resellers of the information campaign and also failed to inform many resellers of the information campaign.[9]

25.    The consent decree leaves hundreds of thousand of defective BOB strollers in the filed and available for use, inevitably resulting in future malfunctions and injuries.

26.    Defendant has made and continues to make misleading and false statements in advertising and marketing materials concerning the quality, safety, and reliability of BOB Strollers, including, without limitation[10]:

    a.    "Swiveling-locking front wheel swivels to maneuver tight turns with ease or locks forward for increased stability when jogging or on rough terrain."

    b.    "State-of-the-art adjustable suspension system offers 3 inches of travel and 2 stages of weight support for an ultra-smooth ride."

    c.    "Air-filled tires on high-impact polymer wheels make for a smooth ride whether on-road or off-road."

    d.    "Ultra-padded seat with ventilation and a five-point harness keeps your child comfortable and secure."

    e.    "Enhanced quick-release design makes it easy to securely attach both the front and back wheels."

    f.    "Easy-remove wheels allow the stroller to become more compact for easy storage in tight spaces."

    g.    "Adjustable front wheel tracking helps correct alignment with a simple twist of the knob."

    h.    "Renowned quality and performance make BOB the #1 Jogging Stroller."

---

[8] https://www.cpsc.gov/s3fs-public/pdfs/recall/lawsuits/abc/049--2018-11-09%20Consent%20Agreement.pdf
[9] https://www.washingtonpost.com/business/economy/britax-missed-deadline-to-send-some-notices-about-its-bob-stroller-despite-deal-with-federal-agency/2019/04/09/5a1ca832-57c1-11e9-9136-f8e636f1f6df_story.html
[10] http://www.bobgear.com/stroller/revolution-pro

     i.   "Thru-axle design for enhanced security."

     j.   "Quick-release lever for easy installation/removal without the need for tools."

27.    Defendant also publishes marketing videos that make substantially the same claims and depict customers jogging and using BOB Strollers at high speeds on rough terrain.[11]

28.    Defendant makes substantially similar claims about quality, safety, and reliability on advertising and marketing materials for all BOB Strollers at issue.

29.    Defendant's statements such as "[s]wiveling-locking front wheel," "locks forward for increased stability when jogging or on rough terrain," "[a]ir-filled tires on high-impact polymer wheels make for a smooth ride," "keeps your child comfortable and secure," "[e]nhanced quick-release design makes it easy to securely attach both the front and back wheels," "[e]asy-remove wheels," "[t]hru-axle design for enhanced security," and "[r]enowned quality and performance make BOB the #1 Jogging Stroller" warrant that BOB Strollers are high-quality, safe, and reliable and that the front wheel will stay securely attached to the stroller during operation.

30.    Defendant's statements concerning the stroller are intended to and do induce customers into believing that BOB Stroller are high-quality, safe, and reliable, that the strollers are free of defects, and that the stroller conform to Defendant's representations.

31.    Plaintiffs and Class members reasonably relied on Defendant's statements when purchasing BOB Strollers.

32.    Customers are therefore willing to and do pay a premium for the quality, safety, and reliability that Defendant advertises.

33.    The BOB Strollers' defective front wheel assembly, by failing to work properly, failed to conform to Defendant's representations.

---

[11] https://www.youtube.com/watch?v=irA9d7nhME0

34.     Plaintiffs and Class members sustained damages as a direct and proximate result of Defendant's conduct and BOB Strollers' defects. Plaintiffs, on behalf of themselves and all similarly situated Class members, demand judgment against Defendant for compensatory damages, including a complete refund of the purchase price of the BOB Strollers, pre- and post-judgment interest, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## CLASS ALLEGATIONS

35.     Plaintiffs bring this action against Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

36.     Plaintiffs seeks certification of a nationwide Class, defined as follows:

> **All persons who purchased a BOB Stroller in the United States which was manufactured on or before September 30, 2015 ("Nationwide Class").**

37.     Plaintiffs also seek certification of a California Class under California law, defined as follows:

> **All persons who purchased a BOB Stroller in California which was manufactured on or before September 30, 2015 ("California Class").**

38.     Plaintiffs also seek certification of a Michigan Class under Michigan law, defined as follows:

> **All persons who purchased a BOB Stroller in Michigan which was manufactured on or before September 30, 2015 ("Michigan Class").**

39.     Plaintiffs also seek certification of a New Jersey Class under New Jersey, defined as follows:

> **All persons who purchased a BOB Stroller in New Jersey
> which was manufactured on or before September 30, 2015
> ("New Jersey Class").**

40.     Plaintiffs also seek certification of a New Hampshire Class under New Hampshire

law, defined as follows:

> **All persons who purchased a BOB Stroller in New Hampshire
> which was manufactured on or before September 30, 2015
> ("New Hampshire Class").**

41.     Plaintiffs also seek certification of a Nevada Class under Nevada law, defined as

follows:

> **All persons who purchased a BOB Stroller in Nevada which
> was manufactured on or before September 30, 2015 ("Nevada
> Class").**

42.     Defendant subjected Plaintiffs and the respective Class members to the same

unfair, unlawful, and deceptive practices and harmed them in the same manner. As a result of

Plaintiffs' purchases, Defendant was also unjustly enriched in the same manner.

### Numerosity

43.     The Classes are so numerous that joinder of all members would be impracticable.

Defendant sells and distributes BOB Strollers throughout California, Michigan, New Jersey,

New Hampshire, Nevada, and the United States, both online and at numerous retail locations

within the United States. Although the number of Class members is not presently known, it is

likely to be comprised of many hundreds of thousands of consumers. The Classes are certainly so

numerous that joinder of all members of the Classes is impracticable.

### Commonality

44.     As outlined below, there are questions of law and fact that are common to all Plaintiffs and Class members' claims. These common questions predominate over any questions that go particularly to any individual member of the Classes. Common questions of fact and law exist because, *inter alia*, Plaintiff and all Class members purchased BOB Strollers. Plaintiffs all paid a premium for the BOB brand of strollers because of Defendant's advertising and marketing for being high-quality, safe, and reliable. In addition, all of Defendant's packaging and labeling for BOB Strollers is uniform throughout California, Michigan, New Jersey, New Hampshire, Nevada, and the United States.

45.     The common questions include, without limitation:

a.   Whether Defendant falsely, deceptively and/or misleadingly misrepresented BOB Strollers as being high-quality, safe, and reliable;

b.   Whether Defendant's misrepresentations and/or omissions are likely to deceive a reasonable consumer;

c.   Whether BOB Strollers, when used by consumers in a normal and customary manner and/or as suggested by Defendant works as advertised, marketed and represented to consumers;

d.   Whether the representations and claims Defendant made and is still making regarding BOB Strollers are unfair, deceptive and misleading to consumers;

e.   Whether Defendant knowingly made false, misleading statements and omitted material information in connection with a consumer sale, and reasonable consumers were likely to rely upon these statements and omissions to their detriment in making a purchase;

f.   Whether Defendant knew or should have known that its representations, marketing statements, and advertisements regarding BOB Strollers' quality, safety, and reliability were unsubstantiated, false, and misleading;

g.   Whether Defendant has breached express and implied warranties in the sale and marketing of BOB Strollers;

h.   Whether Defendant's acts and omissions violated consumer fraud and unfair trade practice statutes;

i.   Whether and to what extent Defendant has been unjustly enriched by its conduct;

     j.   Whether Plaintiffs and members of the Classes did not receive the benefit of their bargain;

     k.   Whether Plaintiffs and members of the Classes were damaged by Defendant's misconduct;

     l.   Whether Plaintiffs and members of the Classes are entitled to damages;

     m.   Whether Plaintiffs and Class members are entitled to compensatory damages, including actual and statutory damages plus interest thereon and/or monetary restitution;

     n.   Whether Defendant must disgorge any sums it has made as a result of its misconduct;

     o.   Whether Defendant's conduct rises to the level of willfulness so as to justify punitive damages; and

     p.   Whether an injunction is appropriate to prevent Defendant from continuing to engage in unfair, deceptive and unlawful activity.

## Typicality

46.    Plaintiffs' claims are typical of the claims of the members of the Classes because they purchased and used BOB Strollers, which were misrepresented and warranted as being high-quality, safe, and reliable when they did not have those characteristics. Thus, Plaintiffs and all Class members sustained the same injury arising out of Defendant's common course of conduct, which violates the respective laws complained of herein. The injury of each Class member was caused directly by Defendants' uniform wrongful conduct in violation of law as alleged herein. Each Class member has sustained, and will continue to sustain, damages in the same manner as Plaintiffs as a result of Defendant's wrongful conduct.

## Adequacy of Representation

47.    Plaintiffs will fairly and adequately protect the interest of the members of the Classes. Plaintiffs have retained competent and experienced class action attorneys to represent their interests and those of the Classes. Plaintiffs' counsel has the necessary financial resources

to adequately and vigorously litigate this class action. Plaintiffs have no adverse or antagonistic interests to those of the Classes. Plaintiffs are willing and prepared to serve the Court and the Class members in a representative capacity, with all of the obligations and duties material thereto, and determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class members.

48.     To prosecute this case, Plaintiffs have chosen the undersigned law firms, which are very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

## Requirements of Fed. R. Civ. P. 23(b)(3)

49.     This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

50.     **Common Questions of Law and Fact Predominate:** The aforementioned questions of law or fact common to Plaintiffs and each Class member's claims predominate over any questions of law or fact affecting only individual members of the Class.

51.     **Superiority:** A Class action is superior to individual actions in part because of the non-exhaustive factors listed below:

a. Joinder of all Class members would create extreme hardship and inconvenience for the affected customers as they reside all across the United States;

b. Individual claims by Class members are impractical because the costs to pursue individual claims exceed the value of what any one Class member has at stake. As a result, individual Class members have no interest in prosecuting and controlling separate actions;

c. There are no known individual Class members who are interested in individually controlling the prosecution of separate actions;

d. The interests of justice will be well served by resolving the common disputes of potential Class members in one forum;

e. Individual suits would not be cost effective or economically maintainable as individual actions;

f. The action is manageable as a Class action; and

g. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of these class actions that would preclude their maintenance as class actions.

## Requirements of Fed. R. Civ. P. 23(b)(1) & (2)

52. Prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class.

53. Defendant has acted or failed to act in a manner generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

54. Defendant's wrongful conduct and practices, if not enjoined, will subject Class members and other members of the public to substantial continuing harm and will cause irreparable injuries to Class members and members of the public who are damaged by Defendant's conduct.

## COUNT I

## UNJUST ENRICHMENT
### (All Classes)

55. Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

56. Defendant received from Plaintiffs and Class members benefits in the form of money and profits from the sale of BOB Strollers which Defendant advertised and marketed as being high-quality, safe, and reliable.

13

57.    Defendant had knowledge of these benefits and voluntarily accepted and retained the benefits.

58.    BOB Strollers have a defective front wheel assembly that allows the front wheel to detach unexpectedly while being operated and therefore cannot conform to Defendant's representations of quality, safety, and reliability.

59.    Defendant misrepresented the quality, safety, and reliability of BOB Strollers to induce customers into believing that BOB Strollers are high-quality, safe, and reliable, that the stroller are free of defects, and that the stroller conform to Defendant's representations.

60.    Plaintiffs and Class members reasonably relied on Defendant's representations when purchasing BOB Stroller.

61.    Plaintiffs and Class members paid a premium price for BOB Strollers but did not receive a stroller commensurate with the price they paid because BOB Strollers are worth far less than advertised.

62.    Defendant has been unjustly enriched and it would be inequitable for Defendant to retain benefits obtained from Plaintiffs and Class members.

63.    Plaintiffs and Class members are entitled to restitution of the amount by which Defendant was unjustly enriched at their expense.

64.    Plaintiffs, on behalf of themselves and all similarly situated Class members, demand restitution by the Defendant in the amounts by which Defendant has been unjustly enriched at Plaintiffs' and Class members' expense, and such other relief as this Court deems just and proper.

**COUNT II**

**BREACH OF EXPRESS WARRANTY**
**(All Classes)**

65.    Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

66.    "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." UCC § 2-313(1)(a).

67.    "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." UCC § 2-313(1)(b).

68.    "It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty." UCC § 2-313(2).

69.    Defendants advertising and marketing statements, as described above, expressly warrant that BOB Strollers are high-quality, safe, and reliable and that the front wheel will stay securely attached to the stroller during operation.

70.    Defendant breached their express warranty because BOB Strollers have a defective front wheel assembly and therefore cannot conform to Defendant's representations of quality, safety, and reliability.

71.    Plaintiffs and Class members sustained damages as a direct and proximate result of Defendant's breach, including damages for economic injuries from spending money on a premium-priced product that they would not have spent had they known of the defects and damages for physical injuries from the failure of the defective stroller.

72.    Plaintiffs and Class members did not receive a stroller commensurate with the price they paid because BOB Strollers are worth far less than advertised.

73.     Plaintiff and Class members have sustained, are sustaining, and will continue to sustain damages, as well as related damages alleged herein if Defendant continues to engage in deceptive, unfair, and unreasonable practices.

74.     Plaintiffs and Class members are entitled to injunctive relief, attorneys' fees and costs, and any other relief that the Court deems just and equitable.

75.     Plaintiffs, on behalf of themselves and all similarly situated Class members, demand judgment against Defendant for compensatory damages, pre- and post-judgment interest, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (All Classes)

76.     Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

77.     "Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." UCC § 2-314(1).

78.     "Goods to be merchantable must be at least such as (a) pass without objection in the trade under the contract description; . . . (c) are fit for the ordinary purposes for which such goods are used; . . . (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and . . . (f) conform to the promise or affirmations of fact made on the container or label if any." UCC § 2-314(2).

79. "It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty." UCC § 2-313(2).

80. Defendant is a "merchant" within the meaning of UCC § 2-104(1).

81. A stroller is not fit for its ordinary purpose if its front wheel is defective and can detach unexpectedly while it is being operated.

82. BOB Strollers were not merchantable at the time of sale because they do not conform to Defendant's representations as to quality, safety, and reliability, as described above, and because they have a defective front wheel assembly that allows the front wheel to detach unexpectedly while being operated. Defendant therefore breached the implied warranty of merchantability.

83. Plaintiffs and Class members sustained damages as a direct and proximate result of Defendant's breach, including damages for economic injuries from spending money on a premium-priced product that they would not have spent had they known of the defects and damages for physical injuries from the failure of the defective stroller.

84. Plaintiffs and Class members did not receive a stroller commensurate with the price they paid because BOB Strollers are worth far less than advertised.

85. Plaintiff and Class members have sustained, are sustaining, and will continue to sustain damages, as well as related damages alleged herein if Defendant continues to engage in deceptive, unfair, and unreasonable practices.

86. Plaintiffs and Class members are entitled to injunctive relief, attorneys' fees and costs, and any other relief that the Court deems just and equitable.

87.     Plaintiffs, on behalf of themselves and all similarly situated Class members, demand judgment against Defendant for compensatory damages, including a complete refund of the purchase price of the BOB Strollers, pre- and post-judgment interest, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## COUNT IV

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, *et seq.*

88.     The California Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

89.     Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

90.     Defendant advertised, offered, or sold goods or services in California and engaged in trade or commerce directly or indirectly affecting the people of California.

91.     Defendant engaged in deceptive acts and practices in the conduct of trade or commerce, in violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), including:

    a.  Knowingly designing, developing, manufacturing, advertising, and selling Strollers with significant Defects, including the front wheel of the Strollers coming off;

    b.  Marketing and selling BOB Strollers that created an unreasonable risk of injury from the front wheel coming off;

    c.  Permitting the sale of stroller that had unreasonable risk of the front wheel coming off;

    d.  Failing to take steps to design a reasonably safe stroller;

    e.  Making affirmative public representations about the safety of the Stroller while, at the same time, not ensuring that safety is a priority in the Stroller; and

      f.   Concealing and/or failing to disclose material facts, including without limitation that, in the Stroller had an unreasonable risk of the front wheel coming off.

92.    Defendant's practices constitute unfair business practices in violation of the UCL because, among other things, they are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and/or any utility of such practices is outweighed by the harm caused to consumers. Defendant's practices violate the legislative policies of the underlying statutes alleged herein: namely, protecting consumers and preventing persons from being injured. Defendant's practices caused substantial injury to Plaintiffs and members of the California Subclass and are not outweighed by any benefits, and Plaintiffs and members of the California Subclass could not have reasonably avoided their injuries.

93.    Defendant has engaged in "unlawful" business acts or practices by violating multiple state laws, including the Consumers Legal Remedies Act, Cal. Civ. Code § 1780, *et seq.*, and California common law, as alleged herein.

94.    Defendant has engaged in fraudulent acts or practices by concealing and/or failing to disclose material facts to California Subclass members, including that in designing BOB Strollers, it failed to take measures to protect safety issues including the front wheel from coming loose. Defendant's fraudulent acts or practices were likely to deceive reasonable consumers.

95.    As a result of Defendant's unfair acts or business practices, Plaintiffs have suffered injury in fact and lost money or property.

96.    Plaintiffs and California Subclass members seek all monetary and non-monetary relief allowed by law, including restitution stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

## COUNT V

## VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
## CAL. CIV. CODE § 1750, *et seq.*

97.    The California Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

98.    The Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

99.    Defendant is a "person" as defined by Cal. Civ. Code §§ 1761(c) and 1770 and has provided "services" as defined by Cal. Civ. Code §§ 1761(b) and 1770.

100.    Plaintiffs and California Subclass members are "consumers" as defined by Cal. Civ. Code §§ 1761(d) and 1770 and have engaged in a "transaction" as defined by Cal. Civ. Code §§ 1761(e) and 1770.

101.    Defendant advertised, offered, or sold goods or services in California and engaged in trade or commerce directly or indirectly affecting the people of California.

102.    Defendant's acts and practices were intended to and did result in the sales of products and services to Plaintiffs and California Subclass members in violation of Cal. Civ. Code § 1770, including:

      a.    Representing that goods or services have characteristics that they do not have;

      b.    Representing that goods or services are of a particular standard, quality, or grade when they were not;

      c.    Advertising goods or services with intent not to sell them as advertised; and

    d.  Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

103.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

104.    Defendant intended to mislead Plaintiff and California Subclass members and induce them to rely on its misrepresentations and omissions.

105.    Had Defendant disclosed to Plaintiff and California Subclass members material facts, including without limitation that, in designing BOB Strollers, Defendant failed to take measures to prevent the front wheel from coming off the Stroller, Defendant would not have been able to continue its business. Instead, Defendant represented that BOB Strollers were safe. Plaintiff and California Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

106.    As a direct and proximate result of Defendant's violations of Cal. Civ. Code § 1770, Plaintiffs and California Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing BOB Strollers.

107.    While Plaintiffs and the California Subclass do not seek to recover damages under the CLRA in this complaint, after mailing appropriate notice and demand in accordance with Cal. Civ. Code §§ 1782(a) & (d), Plaintiffs will subsequently amend this Complaint to also include a request for compensatory and punitive damages.

108.    Plaintiffs, on behalf of themselves and all California Subclass members, seek an order enjoining the acts and practices alleged unlawful herein and reserve their right to amend the complaint to seek damages pursuant to Cal. Civ. Code 1782(d).

## COUNT VI

## VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
## MICH. COMP. LAWS ANN. § 445.903, *et seq.*

109.    The Michigan Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Michigan Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

110.    Defendant and Michigan Subclass members are "persons" as defined by Mich. Comp. Laws Ann. § 445.903(d).

111.    Defendant advertised, offered, or sold goods or services in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws Ann. § 445.903(g).

112.    Defendant engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws Ann. § 445.903(1), including: (a) representing that its goods and services have characteristics, uses, and benefits that they do not have, in violation of Mich. Comp. Laws Ann. § 445.903(1)(c); (b) representing that its goods and services are of a particular standard or quality if they are of another in violation of Mich. Comp. Laws Ann. § 445.903(1)(e); (c) making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, in violation of Mich. Comp. Laws Ann. § 445.903(1)(bb); and (d) failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter, in violation of Mich. Comp. Laws Ann. § 445.903(1)(cc).

113.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

114.    Defendant intended to mislead Plaintiff and Michigan Subclass members and induce them to rely on its misrepresentations and omissions.

115.    Defendant acted intentionally, knowingly, and maliciously to violate Michigan's Consumer Protection Act, and recklessly disregarded Plaintiff and Michigan Subclass members' rights. Defendant's knowledge of BOB Strollers' defects and performance issues put it on notice that BOB Strollers were not as it advertised.

116.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing BOB Strollers.

117.    Plaintiff and Michigan Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $250, injunctive relief, and any other relief that is just and proper.

### COUNT VII

### VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT
### N.R.S. § 598, *et seq.*

118.    The Nevada Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Nevada Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

119.    Defendant advertised, offered, or sold goods or services in Nevada and engaged in trade or commerce directly or indirectly affecting the people of Nevada.

120.    Defendant engaged in deceptive trade practices in the course of its business or occupation, in violation of Nev. Rev. Stat. §§ 598.0915 and 598.0923, including: knowingly making a false representation as to the characteristics, uses, and benefits of goods or services for sale in violation of Nev. Rev. Stat. § 598.0915(5); representing that goods or services for sale are of a particular standard, quality, or grade when Defendant knew or should have known that they

are of another standard, quality, or grade in violation of Nev. Rev. Stat. § 598.0915(7); advertising goods or services with intent not to sell them as advertised in violation of Nev. Rev. Stat § 598.0915(9); failing to disclose a material fact in connection with the sale of goods or services in violation of Nev. Rev. Stat. § 598.0923(A)(2); and violating state and federal statutes or regulations relating to the sale of goods or services in violation of Nev. Rev. Stat. § 598.0923(A)(3).

121.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

122.     Defendant intended to mislead Plaintiff and Nevada Subclass members and induce them to rely on its misrepresentations and omissions.

123.     Had Defendant disclosed to Plaintiff and Nevada Subclass members material facts, including without limitation that, in designing BOB Strollers, Defendant failed to take measures to prevent the front wheel from coming off the Stroller, Defendant would not have been able to continue its business. Instead, Defendant represented that BOB Strollers were safe. Plaintiff and Nevada Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

124.     Defendant acted intentionally, knowingly, and maliciously to violate Nevada's Deceptive Trade Practices Act, and recklessly disregarded Plaintiff and Nevada Subclass members' rights. Defendant's knowledge of BOB Strollers' security and performance issues put it on notice that BOB Strollers were not as it advertised.

125.     As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not

receiving the benefit of their bargain in purchasing BOB Strollers, and increased time and expense in dealing with performance issues.

126.    Plaintiff and Nevada Subclass members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, and attorneys' fees and costs.

## COUNT VIII

## VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT
## N.H. REV. STAT. ANN. § 358-A, *et seq.*

127.    The New Hampshire Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the New Hampshire Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

128.    Defendant is a "person" under the New Hampshire Consumer Protection statute.

129.    Defendant advertised, offered, or sold goods or services in New Hampshire and engaged in trade or commerce directly or indirectly affecting the people of New Hampshire, as defined by N.H. Rev. Stat. Ann. § 358-A:1.

130.    Defendant engaged in unfair and deceptive acts or practices in the ordinary conduct of its trade or business, in violation of N.H. Rev. Stat. Ann. § 358-A:2, including: representing that its goods or services have characteristics, uses, or benefits that they do not have in violation of N.H. Rev. Stat. Ann. § 358-A:2.V; representing that its goods or services are of a particular standard or quality if they are of another in violation of N.H. Rev. Stat. Ann. § 358-A:2.VII; and advertising its goods or services with intent not to sell them as advertised in violation of N.H. Rev. Stat. Ann. § 358-A:2.IX.

131.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

132.    Defendant acted intentionally, knowingly, and maliciously to violate New Hampshire's Consumer Protection Act, and recklessly disregarded Plaintiff and New Hampshire Subclass members' rights. Defendant's knowledge BOB Strollers' defect issues put it on notice that BOB Strollers were not as it advertised. Defendant's acts and practices went beyond the realm of strictly private transactions.

133.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing BOB Strollers.

134.    Plaintiff and New Hampshire Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, punitive damages, equitable relief (including injunctive relief), restitution, civil penalties, and attorneys' fees and costs.

## COUNT IX

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### N.J. STAT. ANN. § 56:8-2, *et seq.*

135.    The New Jersey Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the New Jersey Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

136.    Defendant is a "person," as defined by N.J. Stat. Ann. § 56:8-1(d).

137.    Defendant sells "merchandise," as defined by N.J. Stat. Ann. § 56:8-1(c) & (e).

138.    The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*, prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material

fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

139.    Defendant engaged in deceptive acts and practices in or affecting commerce through the advertisement and packaging of the Strollers by representing to Plaintiff and members of the New Jersey subclass among other things that the products were safe. Such pattern of conduct was uniform in nature with respect to the marketing and sale of the product.

140.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

141.    Defendant intended to mislead Plaintiff and New Jersey Subclass members and induce them to rely on its misrepresentations and omissions.

142.    Defendant acted intentionally, knowingly, and maliciously to violate New Jersey's Consumer Fraud Act, and recklessly disregarded Plaintiff and New Jersey Subclass members' rights. Defendant's knowledge of BOB Strollers' defect issues put it on notice that BOB Strollers were not as it advertised.

143.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing BOB Strollers.

144.    Plaintiff and New Jersey Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all similarly situated individuals, demands judgment against Defendant as follows:

a. Declaring this action to be a proper Class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) & (2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiff and counsel to be representatives of the Classes;

b. Enjoining Defendant from continuing the acts and practices described above;

c. Awarding damages sustained by Plaintiffs and the Classes as a result of the Defendant's conduct, together with pre-judgment interest;

d. Finding that Defendant has been unjustly enriched and requiring it to refund all unjust benefits to Plaintiffs and the Classes, together with pre-judgment interest;

e. Awarding Plaintiffs and the Classes costs and disbursements and reasonable allowances for the fees of Plaintiffs and the Classes' counsel and experts, and reimbursement of expenses;

f. Awarding Plaintiffs and the Classes unjust enrichment damages, injunctive relief, declaratory relief, attorneys' fees, and costs;

g. Awarding Plaintiffs and the Classes damages, injunctive relief, declaratory relief, attorneys' fees, and costs for breach of express warranties;

h. Awarding Plaintiffs and the Classes damages, injunctive relief, declaratory relief, attorneys' fees, and costs for breach of the implied warranty of merchantability; and

i. Awarding such other and further relief the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiffs and the Classes request a jury trial for any and all Counts for which a trial by jury is permitted by law.

Dated: June 17, 2019

Respectfully submitted,

*/s/ Harper Segui*
WHITFIELD, BRYSON & MASON LLP
Federal ID No. 10841
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000

F: 919-600-5035
E: harper@wbmllp.com

WHITFIELD, BRYSON & MASON LLP
Gary E. Mason
5101 Wisconsin Ave NW, Suite 305
Washington, DC 20016
T: 202-429-2290
F: 202-429-2294
E: gmason@wbmllp.com
Harper Segui
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
F: 919-600-5035
E: harper@wbmllp.com

LEVIN SEDRAN & BERMAN LLP
Daniel Levin
Charles S. Schaffer
Nicholas Elia
510 Walnut Street, Suite 500
Philadelphia, PA 19106
T: 215-592-1500
F: 215-592-4663
E: DLevin@lfsblaw.com
   CSchaffer@lfsblaw.com
   Nelia@lfsblaw.com

ROBERT PEIRCE & ASSOCIATES, P.C.
D. Aaron Rihn
707 Grant Street, Suite 2500
Pittsburgh, PA 15219
T: 512-214-7477
E: arihn@peircelaw.com

GOLDENBERG SCHNEIDER, LPA
Jeff Goldenberg
One West Fourth Street, 18th Floor
Cincinnati, OH 45202
T: 513-345-8291
F: 513-345-8294
E: JGoldenberg@gs-legal.com

Attorneys for Plaintiffs and the Class